STATE OF MONTANA ex rel. BOARD OF RAILROAD COMMISSIONERS of the State of Montana, and individual members thereof, Relators, v. DISTRICT COURT of the FIRST JUDICIAL DISTRICT of the State of Montana, in and for the COUNTY OF LEWIS AND CLARK, and NAT ALLEN, Judge, Respondents.

No. 12023.
Submitted March 30, 1971.
Decided April 5, 1971.
483 P.2d 912.

164

William E. O'Leary argued, and David Astle appeared, Helena, for relators.

Alexander, Kuenning, Hall & Miller, Edward C. Alexander, argued, Burton & Coder, Howard C. Burton, Great Falls, appeared, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding wherein the State Board of Railroad Commissioners, hereinafter called the Board, seeks a writ of prohibition directed to the District Court of the First Judicial District, the Hon. Nat Allen presiding.

On ex parte application we issued an order to show cause directed to the district court staying proceedings there and ordering a further hearing here. On the return day, an answer was filed together with briefs. Additionally, the entire record before the Board was filed.

The facts giving rise to the present proceeding are that on February 17, 1960, after full public hearing, the Board issued a certificate of public convenience and necessity to T. James and Mary M. Kitto, d/b/a Kitto Transfer and Storage Company under No. 457. The authority so granted contained two severable grants. One, to transport property (household goods) in the City of Butte and points tributary thereto and, two, to transport:

"HEAVY EQUIPMENT: Heavy Equipment of unusual size or weight requiring special equipment; dredge, mining and milling machinery, equipment and supplies; machinery equipment and supplies used in the construction, operation or maintenance of electrical power plants and transmission systems, natural gas or petroleum transmission lines (including pumping

or compressor stations and equipment), telephone and telegraph lines; machinery, equipment and supplies used in the refinery or processing of ore and rock or in the manufacturing of finished products; tanks; equipment, materials and supplies and crews or personnel used or useful in the control of forest fires, construction of forest service improvements, or fire, or pest control.''

subject to the limitation that all shipments under the second grant must originate or terminate at points or places within a radius of 150 miles of Butte, Montana.

Thereafter, on April 5, 1961, the Kittos and C. W. Lowe made application to the Board for approval of a sale by Kitto to Lowe of that portion of the certificate quoted immediately above. The sale price of that portion of the Kitto authority to be transferred was $17,500. The application was approved and on May 9, 1961, the Board issued to Lowe a certificate granting the authority quoted immediately above under No. 2548.

Lowe commenced and pursued operations under the authority transferred to him; and, acting within his interpretation of the phrase ''* * * machinery, equipment and supplies used in * * * the manufacturing of finished products * * *'' commenced the transportation of various building supplies, cement, and lime (in bulk and bags), concrete pipe, concrete and pumice building block, lime, mineral filler, concrete products and lumber from various points in the state to points and places within 150 miles of Butte. These were the same commodities transported by his predecessor in interest, Kitto, and by the holder of a similar certificate, Reely Transfer & Storage.

Lowe engaged in these transportation activities until sometime prior to August 30, 1963, when field agents of the Board began to issue warning notices to his drivers and to contact his shippers advising that Lowe had no authority to transport such commodities. Responding to the activities of the Board, Lowe caused proceedings to be initiated in the district court, first judicial district, Lewis and Clark County, under file Number 29454, seeking a writ prohibiting such activities of the Board.

and insuring his continuing ability to transport such commodities within the scope of his certificate authorizing the transportation of "machinery, equipment and supplies used in   *   *   * the manufacturing of finished products." The district court upheld Lowe's position, issuing a permanent writ restraining the Board from interference in Lowe's operations and declaring in its findings of fact and conclusions of law that under his certificate, Lowe's operations were lawful; that he could transport the same items as had been transported by his predesessor in interest, Kitto, and a similar certificate holder Reely; and, that he, under his authority, could transport the items testified to and those he had transported in the past.

The Board, dissatisfied with the decision of the district court, perfected an appeal to this Court which was assigned file number 10781. Having perfected its appeal, the Board failed to pursue the same and upon appropriate motion, the Board's appeal was dismissed on December 23, 1964, and remanded to the district court for assessment of costs, which costs and attorney fees were assessed by an appropriate order entered on December 29, 1964.

From December 1964 until September 29, 1967, Lowe continued his transportation of general building materials and supplies to be used in the manufacture of finished products without interference by the Board. On the latter date, the Board approved a lease to Mack E Burgess, d/b/a Builders Transport, of Lowe's certificate 2548, with option to purchase.

Following approval of the lease, Burgess commenced operations under the Lowe certificate, and finding the traffic potential acceptable, decided to exercise his option to purchase the certificate. Needing capital for the purchase, however, he was required to borrow and his bankers were not entirely satisfied that even though Burgess had operated as Lowe had, without interference from the Board, such might not be the future course of events. They wanted the certificate clarified to incorporate the terms of the district court decision in cause 29454.

In consequence, Burgess, through counsel, wrote the Board

for a confirming opinion. In response, Burgess was advised that the Board would issue an order to show cause and hold a public hearing upon the scope of the certificate. Thereafter, the Board served an order to show cause which it had previously issued on October 20, 1967. The order was issued under docket No. 5657 in a proceeding which the Board titled:

"IN THE MATTER of the interpretation of MRC Intrastate Certificate No. 2548, dated May 9, 1961, C. W. Lowe of Missoula, Montana, owner and lessor; Mack E. Burgess d/b/a Builders Transport of Black Eagle, Montana, lessee; and Roberts Rocky Mountain Equipment Company of Butte, Montana, holder of two Notices of Attachment and two Writs of Attachment upon MRC No. 2548."

The ostensible purpose of the hearing ordered was to determine:

"* * * why the above outlined portion of the Certificate should not be interpreted by this Board to authorize:

"1. Heavy equipment as defined below:

"* * * ; machinery equipment and supplies used in the refinery or processing of ore and rock or in the manufacturing of finished products; * * *

"such clause being construed to authorize the transportation of machinery equipment and supplies used in the refinery or processing of ore and rock, or machinery, equipment and supplies used in the manufacturing of finished products of such ore and rock; or

"2. Heavy equipment as defined below:

"* * *; machinery, equipment and supplies used in the refinery or processing of ore and rock or in the manufacturing of finished products; * * *

"such clause being construed to authorize the transportation of machinery, equipment and supplies used in the refinery or processing or ore and rock, or machinery, equipment and supplies used in the manufacturing of finished products."

The parties, Burgess, Lowe, and Roberts Rocky Mountain Equipment appeared and hearing was had on January 10, 1968.

During the course of such hearing, the respondents introduced both oral and documentary evidence. By testimony, it was affirmatively demonstrated that Lowe's predecessor in interest, Kitto, had transported lumber, plywood, plaster-board, wood posts, concrete posts, brick, concrete and pumice building blocks, concrete, metal and ceramic pipe and culverts, structural steel, and feeds. By testimony, it was established that in his operations under the certificate, Lowe had transported the same commodities and in addition, had transported fertilizers, mineral filler in bulk and in bags, and wallboard; that both Lowe and Kitto had transported such commodities under that portion of the certificate authorizing the transportaiton of "machinery, equipment and supplies * * * used in the manufacturing of finished products." Documentary evidence in the form of 162 bills of lading sampling the commodities transported by Lowe under the certificate from 1961 to 1967 was introduced by the respondents. Lowe testified that his transportation of such commodities had been continued by reason of the decision, findings and conclusions rendered by the district court in cause 29454, State ex rel. Lowe v. Board of Railroad Commissioners, heretobefore referred to. Lowe further testified that he was willing to surrender his certificate for reformation and reissuance with the commodities which could be transported as "machinery, equipment and supplies used in the manufacturing of finished products" being limited to mineral filler in bulk and in bags, cement in bulk and in bags, lumber, plywood, wallboard, wood and concrete posts, brick, concrete and pumice building blocks, concrete and ceramic pipes and culverts, metal pipes and culverts, structural steel, fertilizers and feeds. Burgess, the then lessee of the Lowe certificate, testified that in the course of his operations under the certificate as lessee, and in reliance upon the district court decision rendered in State ex rel. Lowe v. Board, he had transported all the commodities identified by Lowe; that he would have no objection to the limitation and

reissuance of Lowe's certificate in such fashion and, finally, that he would be willing to purchase the certificate were it so modified.

No other evidence was submitted and the hearing on the order to show cause issued in docket 5657 was closed and the matter was taken under advisement by the Board. No order was ever issued and no action was taken by the Board as a result of the order to show cause. On February 5, 1968, however, the Board wrote the parties involved in that proceeding, that is Lowe, Burgess and one of Lowe's creditors, Roberts Rocky Mountain Equipment, asking Burgess to declare whether or not he intended to exercise the option to purchase contained in his lease of the certificate and indicating that if a sale were imminent, a public hearing should be had. Burgess responded through counsel that he was willing to buy the certificate only if the scope of the commodities which could be transported thereunder was finally clarified and settled.

On March 13, 1968, the Board issued a notice of public hearing under its same docket number 5657, in a proceeding which it titled:

"IN THE MATTER of the clarification of MRC Certificate No. 2548 issued to C. W. Lowe, Missoula, Montana."

The notice so issued clearly stated that upon the condition the certificate be clarified, Burgess intended to purchase the same.

The public hearing, as noticed, was held on March 26, 1968, at which time eleven carriers and three other interested persons or firms appeared in person or through legal counsel. During the course of the hearing, it was indicated that if the certificate was reissued with the phrase "machinery, equipment and supplies * * * used in the manufacturing of finished products" limited to specific commodities, it would result in an actual reduction of the very broad authority conferred, but that Burgess and Lowe were willing to accept such a limitation. It was settled that no burden rested on the certificate holder such as that required in hearings for the procurement of a certificate

and it was settled that the Board would, in reaching its decision, consider all of the evidence adduced in the proceedings had by Kitto to procure the certificate originally and would consider all of the proceedings had in the district court in cause 29454, State ex rel. Lowe v. Board. These matters being settled, oral and documentary evidence was introduced by Burgess and Lowe. Through Lowe, the same bills of lading or invoices that were introduced into evidence in the hearing on order to show cause (January 10, 1968) were re-introduced and it was testified to that the commodities listed therein had been hauled repeatedly. Through Burgess, it was demonstrated that while operating under Lowe's certificate as lessee, he had consistently transported mineral filler in bulk and in bags, cement in bulk and in bags, lumber, plywood, wallboard, wood and concrete posts, brick, concrete and pumice building blocks, concrete and ceramic pipe and culverts, metal pipe and culverts, structural steel and feed and fertilizers. Two hundred seventy-nine invoices or bills of lading representing a portion of his transportation as lessee under the certificate were put into evidence. Burgess, in his testimony indicated that he did not wish to purchase the certificate until the Board had definitely ruled on the scope of the commodities which could be transported thereunder and that he wanted no problems with the Board. None of the protesting carriers or other parties appearing offered any evidence or testimony. The matter was, however, thoroughly briefed by all parties to the Board.

On October 14, 1968, the Board issued its order number 3279 in docket number 5657 declaring that under his certificate, Lowe was authorized to transport any commodity which in the wording of the district court in cause 29454 he had previously hauled. On December 9, 1968, the Board denied a petition for rehearing on the matter, and to all intents and purposes, the Board's docket 5657 was closed and Lowe's certificate 2548 finally interpreted without reformation and reissuance.

Acting in reliance on the Board's order 3279 in docket 5657, on January 27, 1969, Burgess exercised his option and purchased

Lowe's certificate for $20,000. Lowe and Burgess made a joint application to the Board for transfer of Lowe's certificate to Burgess and on January 28, 1969, the Board approved the transfer and issued certificate 2548 to Burgess.

As holder of the certificate, Burgess continued to engage in the transportation of the same commodities he had transported as the lessee thereof, that is, mineral filler in bulk and in bags, cement in bulk and in bags, lumber, particle board, plywood, millwork, wallboard, wood and concrete posts, brick, concrete and pumice building block, concrete, metal and ceramic pipe and culverts and structural steel. He discontinued the transportation of feeds and fertilizers. These operations continued without hindrance by the Board until December 28, 1970.

Prior to November 13, 1970, Burgess solicited Boise Cascade Transportation Department of Portland, Oregon, for its intrastate loads of lumber and plywood, principally from Missoula (which is within 150 miles of Butte) to Billings. Boise Cascade's Traffic Manager, G. B. Bundy, wished to verify Burgess' authority to render such service and in consequence, on the same day, Bundy wrote the Board inquiring whether under his authority, Burgess might transport building materials from points within 150 miles of Butte to Billings. Bundy having received no reply from the Board by mid-December and Burgess being anxious to procure the traffic, on December 21, 1970, wrote the Board asking them to expedite its reply. On or near December 28, 1970, without a formal meeting, without recorded minutes, and without notice to Burgess, the Board directed the Board's legal counsel to advise Boise Cascade that Burgess could not haul lumber and plywood from Missoula to Billings under the authority he had procured from Lowe. Acting as so instructed, on December 28, 1970, the Board's counsel, William E. O'Leary, wrote Bundy as follows:

"Mr. Mack Burgess of Builders Transport, Great Falls, Montana has requested that I advise your company whether Builders Transport is authorized to transport 'lumber and plywood' from

Missoula to Billings, Montana. According to a Board determination as of this date, the above carrier is not authorized to transport the movements above."

Apparently, by reason of O'Leary's letter to Bundy, Burgess failed to procure Boise Cascade's business. But beyond this, word of O'Leary's letter got to Georgia Pacific Corporation, one of Burgess' steady customers for more than a year, which, apparently relying on the letter, immediately terminated all intrastate traffic in lumber, plywood, wallboard and like materials which it had formerly tendered exclusively to Burgess.

Faced with the prospect of being out of business, Burgess, through counsel, conferred informally with the members of the Board and legal counsel for the Board in an effort to determine the reason for the Board's suddent reversal and in an effort to resolve the procedural impasse which the Board had created. During such conferences, the Chairman of the Board requested a written statement of Burgess' position and suggested procedural remedies. In response, Burgess' views were set forth by letter. Thereafter, and without notice of its intent or affording opportunity to be heard, the Board, on January 26, 1971, issued its Supplemental Order 3279-A in docket number 5657 (re-opened) declaring that Burgess' certificate 2425, as procured from Lowe, included no authority to transport any supplies which might be utilized in the manufacturing of any finished product. Having so declared, the Board then ordered Burgess to appear before it on February 17, 1971 and show cause, if he could, by the production of evidence additional to that already produced by him and his predecessor in interest, Lowe, in docket 5657, why such declaration should not become final.

Believing the Board to have acted beyond the legitimate scope of its jurisdiction and believing that the Board had substantially impaired his rights, Burgess caused proceedings to be instituted in the district court, first judicial district, Lewis and Clark County (Cause No. 34700), against the Board seeking a writ prohibiting the Board from proceeding further in its docket 5657, reformation of his certificate in such fashion as to

clearly identify the building materials and supplies which he might transport, and damages for loss of traffic resulting from activities of the Board in advising his shippers that he was not authorized to transport building materials and supplies.

An alternative writ of prohibition restraining the Board from further proceedings in its docket 5657 was issued and upon the date set for the Board to show cause why the prohibition should not endure pendente lite, the Board moved to quash the writ. Such motion was denied and further proceedings stayed. In consequence, the Board then initiated these proceedings to set aside the writ of prohibition so it might continue its own proceedings in docket 5657. This Court stayed the proceedings both in the district court and before the Board until it could examine the merits of the controversy.

From the foregoing lengthy recital of a voluminous record, we shall attempt to delineate our inquiry here into the issues as we view them.

The Board seeks a writ of prohibition to prohibit the district court from going further with a hearing on the alternative writ of prohibition. It insists that its own hearing which was scheduled for February 17, 1971 was within its rights and duties; and further, that it was at the request of Burgess. It then goes on to argue that in any event Burgess had an adequate remedy at law and was not entitled to the alternative writ of prohibition issued by the district court.

The district court, in its answer and return, argues that the Board acted in excess of its jurisdiction in issuing its supplemental order number 3279-A, that it ignored the prior proceedings and history of the permit; and, that *in essence* the Board put Burgess, the certificate holder, to the task of reproving public convenience and necessity in order to continue operation.

From our recital heretofore made, the actions of the Board are hard to fathom. Why it did not appeal Judge Loble's decision in 1963, why it did approve so many actions, why it suddenly became active again, all puts an aroma of suspicion on the

Board's activity. These questions are not meant to be critical; because so many Board members and employees were involved over a long period of years that criticism would not be fair. However, they do point up an apparent and obvious inability of both the Board and the carrier to act outside the shadow of the entire history of the permit involved.

Our inquiry then is whether the district court action in cause No. 34700 wherein the alternative writ of prohibition was issued with a return day set, should be prohibited by this Court. We feel it needs no citation of authority, based upon our recital of the previous history of the certificate, to find that the proper forum for a final determination of the problems involved is in the district court. Having concluded that, it is clear that this Court should not assume jurisdiction at this time. Accordingly, the petition for a writ of prohibition is denied, the matter returned to the district court with directions to reset the date for hearing on the alternative writ at a time when the parties may have had time to prepare their cases.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL and DALY, concur.